```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                                :
BORAH, GOLDSTEIN, ALTSCHULER, NAHINS &                          :
GOIDEL, P.C.,                                                   :
                                                                :
                          Plaintiff,                            :     22-cv-01788 (LJL)
                                                                :
              -v-                                               :     OPINION AND ORDER
                                                                :
CONTINENTAL CASUALTY COMPANY,                                   :
                                                                :
                          Defendant.                            :
                                                                :
---------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/16/2023

LEWIS J. LIMAN, United States District Judge:

Defendant Continental Casualty Company ("Defendant" or "Continental") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint (the "Complaint") of Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. ("Plaintiff"). Dkt. No. 20. For the reasons that follow, the motion is granted.

## BACKGROUND

In this case, Plaintiff seeks insurance coverage for business interruption and related loss caused by Plaintiff closing its offices and suspending its operations in light of the COVID-19 pandemic. Dkt. No. 14. A score of similar cases have been filed in courts across the country. *See Pac. Indem. Co. v. Kiton Corp.*, 2022 WL 2292769, at *1 (S.D.N.Y. June 24, 2022).

For the purposes of this motion, the Court takes as true the well-pleaded allegations of the Complaint. "The Court at this stage may also consider statements or documents incorporated into the Complaint by reference, such as coverage provisions in the insurance contract at issue." *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 170 (S.D.N.Y. 2020).

### I.  Insurance Policy

Plaintiff is a law firm engaged in the provision of legal services to clients in the New York City area primarily related to real estate and landlord-tenant law. Dkt. No. 14 ¶ 13. Plaintiff's principal office is located in Manhattan, although it has satellite offices in Queens, Melville, and the Bronx. *Id.* ¶ 14. During the relevant period prior to the COVID-19 pandemic, Plaintiff employed 57 attorneys and approximately 80 non-attorneys, all of whom operated from Plaintiff's offices. *Id.* ¶¶ 15–16. A significant portion of Plaintiff's business involves in-person appearances by its employees in court and accordingly Plaintiff depends on the courts and governmental administrative bodies functioning. *Id.* ¶¶ 17–18.

Plaintiff purchased an Insurance Policy (Policy #5094248640) underwritten by Continental for the renewal period covering July 15, 2019 to July 15, 2020 (the "Policy"). *Id.* ¶¶ 1, 22. Plaintiff was not offered the opportunity and did not participate in the negotiation or drafting of the Policy. *Id.* ¶ 25. The premises covered by the Policy are Plaintiff's office locations at: (i) 377 Broadway, Floors 4–7, New York, NY 10013; (ii) 108-18 Queens Boulevard, Forest Hills, NY 11375; (iii) 290 Broad Hollow Road, Melville, NY 11747; and (iv) 800 Grand Concourse, Bronx, NY 10451. *Id.* ¶ 33.

The Policy includes a Business Income and Extra Expense endorsement ("BI & EE Endorsement"). *Id.* ¶ 27. The BI & EE Endorsement provides:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* ¶ 44 (quoting Dkt. No. 14-1 at ECF p. 40). The Policy defines "suspension" (in relevant part) as "[t]he partial or complete cessation of your business activities . . . ." *Id.* ¶ 45 (quoting Dkt. No. 14-1 at ECF p. 37). "Operations" is defined, in relevant part, as "the type of your business

activities occurring at the described premises . . . ." *Id.* ¶ 46 (quoting Dkt. No. 14-1 at ECF p. 35). "Period of restoration" is defined, in relevant part, as the period of time that:

> a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and
>
> b. Ends on the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality . . . .

*Id.* ¶ 47 (quoting Dkt. No. 14-1 at ECF p. 35). The terms "direct physical loss," "direct," "physical loss," and "damage" are not defined in the Policy. *Id.* ¶¶ 29–32, 34. The words "virus" and "pandemic" do not appear in the Policy. *Id.* ¶¶ 36–37.

The BI & EE Endorsement also provides for payment to the insured for extra expense incurred:

> We will pay Extra Expense (other than the expense to repair or replace property) to: (1) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations . . . .

*Id.* ¶ 48 (quoting Dkt. No. 14-1 at ECF p. 41). "Extra Expense" is defined as the "reasonable and necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." *Id.* ¶ 49 (quoting Dkt. No. 14-1 at ECF p. 41).

The Policy also includes a Business Income and Extra Expense–Dependent Property endorsement ("Dependent Property Endorsement"). *Id.* ¶ 50; *see* Dkt. No. 14-1 at ECF p. 152. That endorsement provides for additional coverage for business income loss due to suspension of operations at certain dependent properties within the coverage territory operated by another on whom the insured depends on to, among other things, deliver materials or services or accept the

insured's products or services.  Dkt. No. 14 ¶ 51.  The Dependent Property Endorsement provides that coverage shall extend:

> to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur due to the "suspension" of your "operations" during the "period of restoration."  The "suspension" must be caused by direct physical loss or damage at the premises of a Dependent Property, caused by or resulting from a Covered Cause of Loss.

*Id.* ¶ 52 (quoting Dkt. No. 14-1 at ECF p. 152).  "Dependent Property" is defined as: "property operated by other [on] whom you depend [] to:

> a. Deliver materials or services . . . to you, or to others for your account (Contributing Locations);
> b. Accept your products or services (Recipient Locations);
> c. Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or
> d. Attract customers to your business (Leader Locations)."

*Id.* ¶ 53 (quoting Dkt. No. 14-1 at ECF p. 152).

Plaintiff also added coverage under the Civil Authority rider endorsement ("Civil Authority Endorsement").  *Id.* ¶ 55; *see* Dkt. No. 14-1 at ECF p. 62.  The Civil Authority Endorsement extends the Policy's coverage to:

> the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than the described premises, caused by or resulting from a Covered Cause of Loss.

Dkt. No. 14 ¶ 57 (quoting Dkt. No. 14-1 at ECF p. 62).

## II.     The COVID-19 Pandemic and Instant Dispute

COVID-19 is a contagious disease caused by severe acute respiratory syndrome coronavirus 2 (SARs-COV-2).  *Id.* ¶ 58.  As of April 2, 2022, it resulted in more than 488 million cases and 6.14 million deaths.  *Id.* ¶ 59.

The COVID-19 virus may be transmitted in various manners, including transmission via surfaces.[1] *Id.* ¶ 60. The U.S. Centers for Disease Control and Prevention ("CDC") warn: "The virus that causes COVID-19 can land on surfaces. It's possible for people to become infected if they touch those surfaces and then touch their nose, mouth, or eyes." *Id.* ¶ 61. The Mayo Clinic similarly warns: "The COVID-19 virus can also spread if someone touches his or her eyes, nose or mouth after touching a surface or object with the virus on it. Without cleaning and disinfection, the COVID-19 virus may stay on surfaces from hours to days." *Id.* ¶ 62. In addition, even cleaning property once does not assure that the property will not again be impacted by the coronavirus. *Id.* ¶ 65. Instead, to ensure that COVID-19 does not spread, businesses must be constantly engaged in cleaning efforts at significant cost to comply with the CDC recommendations. *Id.*

At the onset of the COVID-19 pandemic in New York State, the New York Governor declared a state-wide disaster emergency ("Executive Order 202") on March 7, 2020 and issued three subsequent executive orders requiring businesses to utilize, to the maximum extent possible, telecommuting or work from home procedures and employers to reduce in-person workforces by various percentages, including 50% by March 20, 2020 at 8:00 p.m., 75% by March 21, 2020 at 8:00 p.m., and 100% by March 22, 2020 at 8:00 p.m. *Id.* ¶ 69. New York City's Mayor also issued a series of Emergency Executive Orders ("EEOs"), in which the Mayor

---

[1] The Court accepts these assertions as true for purposes of the present motion. However, scientific understanding of the COVID-19 pandemic has grown since the dawn of the pandemic and indicates that transmission via surfaces is extremely rare. *See*, *e.g.*, *Science Brief: SARS-CoV-2 and Surface (Fomite) Transmission for Indoor Community Environment*, Centers for Disease Control and Prevention (Apr. 5, 2021) ("Findings of these studies suggest that the risk of SARS-CoV-2 infection via the fomite transmission route is low, and generally less than 1 in 10,000, which means that each contact with a contaminated surface has less than a 1 in 10,000 chance of causing an infection.").

declared a state of emergency, adopted the restrictions of the Governor's orders, extended provisions of prior orders, and provided mechanisms for enforcing the orders. *Id.* ¶ 70. Two of the EEOs state that "the virus physically is causing property loss and damage." *Id.* ¶ 71. Other EEOs state as a reason for their issuance: "the propensity of the virus to spread person-to-person and also because the actions taken to prevent such spread have led to property loss and damage." *Id.* ¶ 72. In addition, the Chief Judge and Chief Administrative Judge of New York State issued a series of administrative orders requiring courthouse closures and limited civil court filings. *Id.* ¶ 73.

In response to the COVID-19 pandemic, Plaintiff closed its offices as of Saturday, March 21, 2020. *Id.* ¶ 77. At the time Plaintiff closed its offices, New York City had become the epicenter of the pandemic in the United States. *Id.* ¶ 78. Plaintiff states that business establishments with many employees, such as its own, are highly susceptible to becoming or being contaminated; numerous employees of Plaintiff have also since tested positive for COVID-19. *Id.* ¶¶ 75, 81. The Complaint notes that "[c]ompliance with government recommendations, along with compliance with the civil authority orders, effectively made it impossible for [P]laintiff to operate its business in the usual and customary manner causing the business to suffer business losses and added expenses as provided for and covered under the Policy." *Id.* ¶ 80.

Plaintiff's offices remained closed for at least 12 months. *Id.* ¶ 77. During the period between March 21, 2020 to March 21, 2021, the projected revenue that Plaintiff lost based upon prior periods of similar operation was approximately two million dollars. *Id.* ¶ 82.

Plaintiff instructed its insurance agent on March 21, 2020 to notify Continental of the losses it anticipated would result from the COVID-19 pandemic. *Id.* ¶ 83. Continental registered

6

the claim as presented on March 23, 2020. *Id.* ¶ 84. Continental denied the claim by letter dated May 19, 2021, stating principally that there was no "direct physical loss or damage" to the covered property, and that the claimed loss was thus not caused by any "direct physical loss or damage." *Id.* ¶¶ 90–91.

## PROCEDURAL HISTORY

Plaintiff commenced the instant action against Continental in the Supreme Court of the State of New York, New York County on or about January 27, 2022. Dkt. No. 1 at 1. Continental removed the action to this Court on March 3, 2021. *Id.* On April 21, 2022, Plaintiff refiled its Complaint. Dkt. No. 21. In the Complaint, Plaintiff asserts two causes of action. *Id.* The first cause of action is for declaratory relief that Plaintiff's loss of income and extra expense is covered under the Policy's BI & EE Endorsement, the Policy's Dependent Property Endorsement, and the Policy's Civil Authority Endorsement. *Id.* ¶¶ 106–09. The second cause of action is for breach of contract on the basis that Continental breached its contract with Plaintiff by failing and refusing to pay Plaintiff for its covered business interruption losses. *Id.* ¶¶ 110–16.

On July 25, 2022, Continental moved to dismiss the case. Dkt. Nos. 20–22. Plaintiff filed its memorandum of law and declaration in opposition to the motion to dismiss on September 23, 2022. Dkt. Nos. 28–29. On October 26, 2022, Continental filed its reply memorandum of law in support of its motion to dismiss. Dkt. No. 31.

On January 4, 2023, Plaintiff asked this Court to defer consideration of the motion to dismiss in light of the fact that the New York Court of Appeals granted leave to appeal in an analogous case. Dkt. No. 32. Continental opposed the request on January 6, 2023. Dkt. No. 33. The Court denied Plaintiff's request to stay consideration of the motion. Dkt. No. 34.

## DISCUSSION

The central issue that this Court must address in ruling on Defendant's motion to dismiss is whether the COVID-19 pandemic caused "direct physical loss of or damage" to property. Dkt. No. 22 at 1–2; Dkt. No. 28 at 1. Each of the three endorsements in the policy under which Plaintiff seeks coverage applies only if there is "direct physical loss of or damage" to property. The BI & EE Endorsement provides that the suspension of operations "must be caused by direct physical loss of or damage to property at the described premises." Dkt. No. 14-1 at ECF p. 40. Similarly, the Dependent Property Endorsement provides that the suspension "must be caused by direct physical loss or damage at the premises of a Dependent Property." *Id*. at ECF p. 152. Finally, the Civil Authority Endorsement provides that the "civil authority action must be due to direct physical loss of or damage to property at locations, other than the described premises." *Id*. at ECF p. 62. Defendant argues that Plaintiff has failed to plausibly state a claim for coverage as Plaintiff has not asserted that the COVID-19 pandemic actually caused "physical loss of or damage" to any property. Dkt. No. 22 at 10.

Whether the closure of a business due to the COVID-19 pandemic triggers coverage under substantially similar insurance policies has been addressed repeatedly by the Second Circuit. *See*, *e.g.*, *SA Hosp. Grp., LLC v. Hartford Fire Ins. Co.*, 2022 WL 815683 (2d Cir. Mar. 18, 2022); *Deer Mountain Inn LLC v. Union Ins. Co.*, 2022 WL 598976 (2d Cir. Mar. 1, 2022); *Kim-Chee LLC v. Phila. Indem. Ins. Co.*, 2022 WL 258569 (2d Cir. Jan. 28, 2022); *Rye Ridge Corp. v. Cincinnati Ins. Co.*, 2022 WL 120782 (2d Cir. Jan. 13, 2022); *10012 Holdings, Inc. v. Sentinel Insurance Co., Ltd.*, 21 F.4th 216 (2d Cir. 2021). In each case, the Second Circuit has answered that question in the negative. *See Plaza Athenee Hotel Co. Ltd. v. Cont'l Cas. Co.*, 2022 WL 902647, at *3 (S.D.N.Y. Mar. 27, 2022).

In *10012 Holdings, Inc.*, the Second Circuit addressed the appeal of a brick-and-mortar art gallery and dealership that claimed it had been improperly denied "Business Income" and "Extra Expense" coverage arising from the suspension of its business operations as a result of the COVID-19 pandemic and the executive orders issued by the New York Governor.  21 F.4th at 219.  Similar to the policy at issue in this case, the policy in *10012 Holdings* only extended to "direct physical loss or physical damage" to the plaintiff's property.  *Id.*  The Second Circuit, applying New York law,[2] held:

> in accord with *Roundabout Theatre* [*Co. v. Continental Casualty Co.*, 751 N.Y.S.2d 4 (1st Dep't 2002)] and every New York state court to have decided the issue, that under New York law the terms "direct physical loss" and "physical damage" in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property.

*Id.* at 222.  The court concluded that "[b]ecause 10012 Holdings alleges only that it lost access to its property as a result of COVID-19 and the governmental shutdown orders, and not that it suspended operations because of physical damage to its property," "10012 Holdings cannot recover under either the Business Income or Extra Expense provisions."  *Id.* at 223.  The Circuit held that this same reasoning also precluded coverage under the policy's Civil Authority provision.  *Id.*  Specifically, the Circuit stated:

> 10012 Holdings acknowledges that coverage under the Civil Authority provision, which, as previously noted, also requires a "Covered Cause of Loss" damaging property, is contingent on showing that the civil authority orders — here, the executive orders issued by the Governor — resulted from a risk of direct physical loss to property in the vicinity of the gallery. But the executive orders were the result of the COVID-19 pandemic and the harm it posed to human beings, not, as

---

[2] The parties apply New York law in their brief and therefore appear to agree that New York law applies to this issue.  *See* Dkt. No. 22 at 8; Dkt. No. 28 at 2; *see also Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" (citation omitted)).  In addition, "[a] court may presume that the parties consent to the application of the forum state's choice of law when no party raises choice of law."  *Pac. Indem. Co. v. Kiton Corp.*, 2022 WL 4237092, at *2 (S.D.N.Y. Sept. 14, 2022).

> "risk of direct physical loss" entails, risk of physical damage to property. Shuttering a gallery because of possible human infection does not qualify as a "risk of direct physical loss."

*Id.* The court also noted that coverage under the Civil Authority provision was precluded because, even assuming that the COVID-19 pandemic itself posed a risk of physical loss, the complaint did not plausibly allege that the physical presence of COVID-19 in neighboring properties was what caused the closure of plaintiff's property, as required under the relevant provision; instead, the complaint alleged that the closure was due to the risk of COVID-19 at plaintiff's *own* property. *Id.*

Following *10012 Holdings*, the Circuit issued a number of summary orders denying claims for insurance coverage based on suspensions of business operations due to COVID-19 under provisions requiring that there be "direct physical loss of or damage" to property. *Pac. Indem. Co.*, 2022 WL 2292769, at *4 (collecting and summarizing cases). In each of these cases, the Circuit has held that "that closures of businesses due to the presence of COVID-19 do not qualify as a 'direct physical loss.'" *Buffalo Xerographix, Inc. v. Sentinel Ins. Co., Ltd.*, 2022 WL 4241191, at *2 (2d Cir. Sept. 15, 2022). "Instead, there must be 'actual physical loss of or damage to the insured's property' to qualify for coverage." *Id.* (quoting *10012 Holdings*, 21 F.4th at 222).

The Circuit has also made clear that "[e]ven if there are circumstances in which a virus might cause the actual physical loss of or damage to property, the presence of COVID-19 on surfaces at a retail store or office would not cause the store or office to be physically lost or damaged." *Id.* For example, in *Kim-Chee*, the Circuit rejected the claim of an operator of a tae-kwon-do studio under its insurance policy based on its argument that the virus itself inflicted actual physical loss of or damage to property. 2022 WL 258569 at *1. In affirming the dismissal of the complaint, the Circuit stated:

10

> Kim-Chee alleges that the virus is "ubiquitous, such that it exists everywhere," that it "was present at, in, throughout, and on Plaintiffs' Premises and property within one mile of Plaintiffs' property," and that "[p]roperty in the immediate area of Plaintiffs' Premises . . . was exposed to the Virus" and "had the Virus on surfaces therein." These generic allegations are insufficient to state a claim. Even assuming the virus's presence at Kim-Chee's tae-kwon-do studio, the complaint does not allege that any part of its building or anything within it was damaged—let alone to the point of repair, replacement, or total loss. Nor does Kim-Chee explain how, other than by the denial of access, any of its property could no longer serve its insured function. To the contrary, we agree with the district court that the virus's inability to physically alter or persistently contaminate property differentiates it from radiation, chemical dust, gas, asbestos, and other contaminants whose presence could trigger coverage under Kim-Chee's policy.

*Id.* at *2.

Here, the Complaint alleges that Plaintiff is entitled to coverage as a result of being compelled to close and suspend its operations due to COVID-19. Dkt. No. 14 ¶ 1. It alleges that the COVID-19 virus caused "direct physical loss of or damage to" property because it "can land on sources" and it is thus "possible for people to become infected if they touch those surfaces and then touch their nose, mouth, or eyes." *Id.* ¶ 61 (citation omitted). The Complaint also alleges that "[w]ithout cleaning and disinfection, the COVID-19 virus may stay on surfaces from hours to days" and is "much more resilient to cleaning than other respiratory viruses so tested." *Id.* ¶¶ 62–64. The Complaint further states that because "cleaning only sanitizes property (if performed correctly) at any given moment in time" and the surface may get reinfected, "businesses [must] constantly engage in cleaning efforts at a significant cost in order to comply with CDC recommendations." *Id.* ¶ 65.

The allegations in this case are thus substantively indistinguishable from those the Second Circuit addressed in *10012 Holdings* and its progeny including *Kim-Chee*. Similar to the policies in those cases, the Policy provisions that Plaintiff invokes here cover and are limited to "direct physical loss or damage" to property. Plaintiff's contention that it is covered under these

11

provisions based on the closure of its business due to the presence of COVID-19 thus seems plainly foreclosed under the reasoning of *10012 Holdings* and *Kim-Chee*.

Nonetheless, Plaintiff argues that these cases do not foreclose its claims as *10012 Holdings* is distinguishable because the plaintiff there did not allege that it suspended operations due to physical damage to its property and the Second Circuit cases that have addressed such an allegation, including *Kim-Chee*, are summary orders with no precedential effect. Dkt. No. 28 at 16.

Plaintiff is correct that the Second Circuit in *10012 Holdings* did not specifically address an argument by the plaintiff that it suffered property damage due to the physical presence of COVID-19 on surfaces at the relevant property. However, the Second Circuit addressed and rejected this argument in *Kim-Chee*, as discussed, and again in *Buffalo Xerographix, Inc. See Buffalo Xerographix, Inc.*, 2022 WL 4241191, at *2 ("Even if there are circumstances in which a virus might cause the actual physical loss of or damage to property, the presence of COVID-19 on surfaces at a retail store or office would not cause the store or office to be physically lost or damaged."); *Kim-Chee*, 2022 WL 258569, at *2 ("Even assuming the virus's presence at Kim-Chee's tae-kwon-do studio, the complaint does not allege that any part of its building or anything within it was damaged—let alone to the point of repair, replacement, or total loss."). Although it is true that both of these decisions were issued via summary order and thus are not precedential, *see* 2d Cir. R. 32.1.1(a), that does not mean that this Court is free to disregard them. Summary orders are "deemed some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion," *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010), and have "persuasive" value, *see United States v. Gordon*, 2020 WL 529301, at *3 (S.D.N.Y. Feb. 3, 2020) (Sullivan, J.); *see also United States v. Payne*, 591

F.3d 46, 58 (2d Cir. 2010) ("Although we decided *Petrucelli* by nonprecedential summary order, rather than by opinion, our '[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.'" (citation omitted)); *Abrue v. United States*, 2020 WL 4570338, at *4 (S.D.N.Y. Aug. 7, 2020); *United States v. Tejeda*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010) ("The Court is not persuaded that it is at liberty not only to disregard but contradict a Second Circuit ruling squarely on point merely because it was rendered in a summary order.").

The Court also sees no reason to conclude that *Kim-Chee* was wrongly decided nor does Plaintiff provide such a reason. To the contrary, *Kim-Chee* has since been cited with approval by a recent decision of the First Department of the New York Appellate Division. In that case, *Consolidated Restaurant Operations, Inc. v. Westport Insurance Corp.*, 167 N.Y.S.3d 15 (1st Dep't 2022), the First Department, after conducting a thorough survey of relevant law, held that "conclusory assertions that COVID-19 causes physical damage to property because it is contagious and hard to clean fail to state a basis for coverage where the policy requires direct physical loss or damage to the property." *Id.* at 21–22. In affirming dismissal of the complaint, the court noted that plaintiff had failed "to identify in either its pleading or the proposed amended complaint a single item that it had to replace, anything that changed, or that was actually damaged at any of its properties." *Id.* at 24. The First Department recently reaffirmed this holding in *Madison Square Garden Sports Corp. v. Factory Mut. Ins. Co.*, 2023 WL 1826737, at *1 (N.Y. App. Div. Feb. 9, 2023). Although the New York Court of Appeals has not

yet ruled on this issue, these decisions of a state intermediate appellate court are "helpful indicators of how the state's highest court would rule."[3]  *10012 Holdings, Inc.*, 21 F.4th at 221.

In addition, the conclusion that plaintiff has not alleged a direct physical loss is supported not only by the Second Circuit's decision in *Kim-Chee* and the First Department's decision in *Consolidated Restaurant Operations, Inc.*, but also "by the unbroken line of trial court decisions, [where] federal courts applying New York law have ruled that the closure of businesses due to the suspected presence of the virus . . . do not qualify as direct physical loss or damage, and by those of other courts that have concluded that contamination which is short-lived or does not prevent the use of the structure does not qualify as direct physical loss." *Pac. Indem. Co.*, 2022 WL 2292769, at *5 (citation omitted); *see Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*, 535 F. Supp. 3d 152, 158 (W.D.N.Y. 2021), *aff'd*, 2022 WL 258569 (collecting cases).[4]  That unbroken line of trial court decisions includes this Court's own prior decision in *Pacific Indemnity Company*, in which it followed the reasoning of *Kim-Chee* to deny coverage under a nearly

---

[3] The Vermont Supreme Court's recent decision in *Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co.*, 287 A.3d 515 (Vt. 2022), does not compel a contrary result.  In that case, the court, interpreting a substantially similar contractual provision to that at issue in this case, held that the complainant adequately alleged "that the [COVID-19] virus physically altered property in insured's shipyards when it adhered to surfaces." *Id.* at 534.  The Vermont Supreme Court, however, based its decision in part on Vermont's "'extremely liberal' notice-pleading standards," *id.* at 533, which do not apply here.  Moreover, in construing the insurance contract at issue in this case, the Court is bound by New York law, not Vermont law.  *See 10012 Holdings, Inc.*, 21 F.4th at 221.

[4] The Court rejects Plaintiff's argument that these decisions—and the Court's holding today—are contrary to the principle that when language in a policy is doubtful or uncertain, its meaning must be resolved in favor of the insured and against the insurer.  Dkt. No. 28 at 2–3.  "[A]n ambiguity . . . does not arise from an undefined term in a policy merely because the parties dispute the meaning of that term." *Consol. Rest. Operations, Inc.*, 167 N.Y.S.3d at 20.  And, both the Second Circuit and the First Department concluded that the relevant provision *unambiguously* requires evidence of actual physical damage.  *See Kim-Chee*, 2022 WL 258569, at *1; *Consol. Rest. Operations, Inc.*, 167 N.Y.S.3d at 21 ("We reject plaintiff's argument that the policy is ambiguous.").

identical provision to that at issue in this case to a New York company for losses it sustained as a result of the COVID-19 pandemic. 2022 WL 2292769, at *5.

For these reasons, the Court follows the decisions of the Second Circuit in *10012 Holdings* and *Kim-Chee*. Accordingly, it concludes that Plaintiff's Complaint fails to state a claim for relief and does not address Plaintiff's alternatives bases for dismissal.

## CONCLUSION

The motion to dismiss is GRANTED. Because Plaintiff has identified no facts it could allege that would support coverage under the Policy, the dismissal is with prejudice. *See*, *e.g.*, *Pac. Indem. Co.*, 2022 WL 2292769, at *5 (dismissing similar complaint with prejudice); *Plaza Athenee Hotel Co. Ltd.*, 2022 WL 902647, at *4 (same).

The Clerk of Court is respectfully directed to close Dkt. No. 20.

SO ORDERED.

Dated: February 16, 2023
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge